Opinion for the court by Associate Judge Fisher.
Dissenting opinion by Associate Judge Beckwith at page 177.
Fisher, Associate Judge
After a bench trial, appellant Gilberto Lopez-Ramirez was convicted of attempted misdemeanor sexual abuse,[1] but acquitted of three counts of contempt.[2] Appellant argues that he should have received a jury trial because his “total financial exposure” was greater than $4,000 when taking into account assessments under the Victims of Violent Crime Compensation Act (WCCA). We affirm the decision of the *171 Superior Court denying' appellant’s request for a jury trial. We remand for the limited purpose of correcting appellant’s sentence,
I. Background
WCCA assessments are mandatory payments “imposed upon each person convicted of or pleading guilty or nolo conten-dere to the offense in the Superior Court of the District of Columbia or any other court in which the offense is charged.” D.C. Code § 4-516(a) (2012 Repl.). A defendant must pay “an assessment of between $50 and $250 for ... misdemeanor offenses, and an assessment of between $100 and $5,000 for each felony offense[.]” Id. The assessments are placed in a fund that is used to compensate victims of crime in the District of Columbia. See Parrish v. District of Columbia, 718 A.2d 133, 133-34 (D.C. 1998); see also D.C. Code 4-515 (2012 Repl.) (Crime Victims Compensation Fund).
D.C. Code § 16-705(b)(l)(B) (2012 Repl.) allows a defendant to demand a trial by jury if he “is charged with 2 or more offenses which are punishable by a cumulative fíne or penalty of more than $4,000 or a cumulative term of imprisonment of more than 2 years[.]” On the day before trial, appellant moved for a jury trial, arguing that an assessment under the WCCA should be considered a “fine or penalty” within the meaning of this statutory provision.
Standing alone, the charge of attempted misdemeanor sexual abuse exposed appellant to paying $750: a $500 fíne, plus a $250 WCCA assessment. See D.C. Code §§ 22-3006, -3018 (2012 Repl.) (setting a maximum fine of $500 for attempted misdemeanor sexual abuse). Appellant was exposed to a potential payment of $3,750 if convicted of the three contempt counts: $3,000 in fines, and $750 in WCCA assessments. See D.C. Code §§ 23-1329(c), 22-3571.01 (2012 Repl.) (setting a maximum fine of $1,000 for each contempt violation). Appellant therefore faced total potential payments of $4,500. Because this amount exceeded the $4,000 threshold for fines or penalties in D.C. Code 16-705(b)(l)(B), appellant, argued that he was entitled to a jury trial.
Judge Laura Cordero rejected appellant’s argument, ruling that a WCCA assessment “is not a fine.” She cited Gotay v. United States, 805 A.2d 944 (D.C. 2002), in which this court noted that the WCCA “does not call [these sums] fines; moreover, fines are generally prescribed in the statutes that define particular crimes and establish the penalties for them.” Id. at 948 n.9. The Gotay court decided to adhere to the statutory term “assessments” when referring to WCCA payments. Id. However, the court in Gotay was not presented with the question we consider here— whether a WCCA assessment should count as a “fine or penalty” for purposes of determining the statutory right to a jury trial.
Because appellant only faced a maximum payment of $3,500 if WCCA assessments were not included, Judge Cordero’s ruling meant that he could not cross the $4,000 threshold established in D.C. Code § 16-705(b)(1)(B) to obtain a jury trial. After convicting appellant of attempted misdemeanor sexual abuse, Judge Neal E. Kravitz sentenced him to 180 days’ incarceration, with execution of sentence suspended as to all but thirty days; two years of probation; and a $50 payment under the WCCA. On appeal, Mr. Lopez-Ramirez reiterates his argument that WCCA assessments should be treated as fines or penalties under D.C. Code § 16-705(b)(1)(B), thus making his case jury-demandable.
*172 II. Analysis
We note as an initial matter that our inquiry’ focuses on the statutory right to a jury trial conferred in the District of Columbia. Appellant has not asserted that his constitutional right to a jury trial has been violated, and such a claim’ would fail under Supreme Court precedent. See, e.g., Lewis v. United States, 518 U.S. 322, 323, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996) (holding “that no jury trial right exists where a defendant is prosecuted for multiple petty offenses”); United States v. Nachtigal, 507 U.S. 1, 4-6, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993) (holding that a defendant was “not constitutionally entitled to a jury ' trial” because he was charged with a “petty offense” even though the penalties for the offense included a maximum fine of $5,000), The issue presented is entirely a matter of legislative intent: did the Council of the District of Columbia intend that a WCCA assessment be treated as a fine or penalty for purposes of applying D.C. Code § 16-705?
A. Standard of Review
Our review of questions of statutory interpretation is de novo. Peterson v. United States, 997 A.2d 682, 683 (D.C. 2010). “We begin by looking first to the plain language of the statute to determine if it is clear and unambiguous.” Id. at 684 (internal quotation marks omitted). We are mindful, however, that “[s]tatutory interpretation is a holistic endeavor[.]” Tippett v. Daly, 10 A.3d 1123, 1127 (D.C. 2010) (en banc) (quoting Washington Gas Light Co. v. Pub. Serv. Comm’n, 982 A.2d 691, 716 (D.C. 2009)). “When interpreting a statute, the judicial task is to discern, and give effect to, the legislature’s intent.” In re C.G.H., 75 A.3d 166, 171 (D.C. 2013) (quoting A.R. v. F.C., 33 A.3d 403, 405 (D.C. 2011)). Indeed, “the primary rule” of statutory construction “is to ascertain and give effect to legislative intent and to give legislative words their natural, meaning; should effort be made to broaden the meaning of statutory language by mere inference or surmise or speculation, we might well defeat true legislative intent.” Grayson v. AT & T Corp., 15 A.3d 219, 237-38 (D.C. 2011) (en banc) (alterations omitted) (quoting Banks v. United States, 359 A.2d 8, 10 (D.C. 1976)).
Thus, “[t]he words of a statute are a primary index but not the sole index to legislative intent; the words cannot prevail over strong contrary indications in the legislative history." Id. at 238 (internal quotation marks omitted). “It is a fundamental .canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” O’Rourke v. District of Columbia Police & Firefighters' Ret. & Relief Bd., 46 A.3d 378, 383 (D.C. 2012) (quoting FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133, 120 S.Ct. 1291, 146 L.Ed.2d 121 (2000)).
B. The Text of the Statutes
We begin by looking at the statutory texts. “Fine” and “penalty” are not defined in D.C, Code § 16-705, but the legislature could not have thought that WCCA assessments fell within those terms when it first enacted that statute. See, e,g., D.C. Code § 11-715a (1961 ed.) (recodifying the provision that a defendant may demand a jury trial when the “fine or penalty” exceeds certain thresholds). WCCA assessments .were not created until 1982. See 29 D.C, Reg. 983-85 (1982). Appellant nonetheless argues that WCCA assessments should be considered to be fines or penalties under D.C. Code § 16-705 because, among other reasons, they “place a financial burden on the defendant,” they “are imposed as part of a defendant’s sentence,” they have characteristics that seem to fall .within dictionary. definitions of *173 ‘‘fine” and “penalty,” and the “failure to pay them will result in the same treatment as'the failure to pay any other fine or penalty.”
It is not obvious from the text of the WCCA that the Council intended those assessments to fall within the term “fíne or penalty,” as used in 16-705. First, the Council used the word “assessment” in the WCCA rather than “fine” or “penalty.” The Council also specified that WCCA assessments were to be imposed “[i]n addition to and separate from punishment imposed,” see D.C. Code § 4-516(a) (2012 Repl.), suggesting that the Council did not consider WCCA-assessments to be punishment in the same way that a “fine or penalty” is. See id. § 16 — 705(b)(1)(B) (providing that a defendant may receive a jury trial when he “is charged with 2 or more offenses which are punishable by a cumulative fine or penalty of more than $4,000” (emphases added)).[3] Further, D.C. Code § 4-516(c) provides that WCCA assessments “shall be collected as fines.” This language would be unnecessary if the Council otherwise equated -“assessments” with “fines.”[4]
Nonetheless, given that “fine,” “penalty,” and “assessment” can “seem ambiguous in isolation,” we look to legislative history and to “the remainder of the statutory scheme” to discern the legislature’s intent. Ferguson v. United States, 157 A.3d 1282, 1285-86 (D.C. 2017). An examination of legislative history reveals no evidence that the Council intended WCCA assessments to affect the meaning of the “fine or penalty” language, in D.C. Code § 16-705. Such an interpretation would disrupt a statutory scheme that the Council has carefully constructed over decades.
C. The Impact on Other Statutes
Adopting appellant’s argument would affect much more than the “cumulative fine or penalty” provision invoked by appellant. It would also dramatically alter the application of D.C. Code § 16-705(b)(1)(A), *174 which has provided since 1993[5] that a defendant may demand a jury trial when he “is charged with an offense which is punishable by a fine or penalty of more than $1,000 or by imprisonment for more than 180 days.” See 40. D.C. Reg. 796, 799 (1993). In 1994 the Council passed the Misdemeanor Streamlining Act, which reduced the maximum penalties for more than forty crimes to a fine of not more than $1,000 or imprisonment for not more than 180 days, or both, for the express purpose of making those crimes non-jury-demandable. See 41 D.C. Reg. 2608 (1994); D.C. Council, Report on Bill 10-98 at 3-8 (Jan. 26, 1994). In 2013 the Council standardized the maximum fine for 180-day crimes at $1,000. See D.C. Code § 22-3571.01(b) (2012 Repl. & Supp. 2014); 60 D.C. Reg. 9834 (2013).
Thus, a vast number of misdemeanor offenses currently have a maximum fine of $1,000. Under appellant’s interpretation of “fine or penalty,” a mandatory WCCA assessment would be added to the $1,000 maximum fine for all of those offenses, suddenly making them all jury-demanda-ble under D.C. Code if 16-705 (b)(1)(A) even when charged in a single-count information.[6] This interpretation would produce a result wholly at odds with the intent of the Misdemeanor Streamlining Act. There is absolutely no evidence that the Council intended this result. Accordingly, even if a WCCA assessment could be considered a “fine,” “penalty,” or “punishment” for some purposes, we would reject appellant’s argument. See, e.g., District of Columbia Office of Tax & Revenue v. Sunbelt Beverage, LLC, 64 A.3d 138, 145 (D.C. 2013) (“[I]t is well established that the literal meaning of a statute will not be followed when it produces absurd results[.]” (internal quotation marks omitted)); Peoples Drug Stores v. District of Columbia, 470 A.2d 751, 754 (D.C. 1983) (en banc) (“[A] court may refuse to adhere strictly to the plain wording of a statute in order to effectuate the legislative purpose[.]” (internal quotation marks omitted)).
Indeed, adopting appellant’s position would suggest that the Misdemeanor Streamlining Act has been misapplied since it was enacted. But nothing in the committee report for the 1997 amendments to the WCCA suggests that the Council intended the result appellant urges, see D.C. Council, Report on Bill 11-657 (Sept. 26, 1996), and we decline to find it by implication. Cf., e.g., Richardson v. United States, 927 A.2d 1137, 1143 (D.C. 2007) (warning that “[rjepeals by implication are not favored” and that “[i]n the absence of any express repeal or amendment, a later statute is presumed to be in accord with the legislative policy embedded in a prior statute so as to allow the prior and later statutes to be construed together” (alterations omitted)).
We have stressed that “the canon disfavoring repeal by implication must be taken seriously”:
*175 It is one of the fundamental ground rules under which laws are framed. Without it, determining the effect of a bill upon the body of preexisting law would be inordinately difficult, and the legislative process would become distorted by a sort of blind gamesmanship, in which Members of [the legislature] vote for or against a particular measure according to their varying estimations of whether its implications will be held to suspend the effects of an earlier law that they favor or oppose.
Speyer v. Barry, 588 A.2d 1147, 1165 (D.C. 1991) (quoting United States v. Hansen, 772 F.2d 940, 944 (D.C. Cir. 1985)). Consequently, we demand that “the intention of the legislature to repeal ... be clear and manifest.” Id. (emphasis omitted) (quoting Kremer v. Chem. Const. Carp., 456 U.S. 461, 468, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).
We confront a similar situation here. Strictly speaking, appellant is not asserting that any portions of § 16-705 have been repealed by implication, but his argument would have much the same effect. He contends that the day-to-day application of § 16-705 has been dramatically altered either by implication or by inadvertence. The intention of the legislature to make this change certainly is not “clear and manifest.”
D. The Legislative History of the Misdemeanor Jury Trial Act of 2002
Perhaps more importantly, the legislative history of the very statute on which appellant relies dispels the notion that the Council intended for WCCA assessments to be considered fines or penalties for purposes of determining the right to a jury trial. D.C. Code § 16-705(b)(1)(B) was enacted as part of the Misdemeanor Jury Trial Act of 2002. See 49 D.C. Reg. 3439 (2002). The legislation apparently was prompted by the Supreme Court’s decision in Lewis, which held that the Sixth Amendment right to a jury trial did not limit the number of petty offenses that could be joined in one prosecution. See Lewis, 518 U.S. at 323-24, 116 S.Ct. 2163; D.C. Council, Report on Bill 14-2 at 1-2 (Nov. 27, 2001). In the committee report, the Council expressed concern with allowing prosecutors to charge a defendant with multiple misdemeanor offenses, which cumulatively would “potentially res'ult[] in lengthy prison sentences,” unless a trial by jury was provided. D.C. Council, Report on Bill 14-2 at 1. However, the Council made clear that it was “trying to balance the interests of efficiency and justice” when setting the thresholds for determining when a defendant could demand a jury trial. Id. at 4.
In that balancing process, the Council rejected arguments by the Public Defender Service for the District of Columbia and the American Civil Liberties Union that defendants charged with multiple offenses should receive a jury trial whenever the maximum cumulative penalty would be more than 180 days. Id. at 4, 7, Attachment E (testimony of Laura E. Hankins, Chief Legislative Counsel, Public Defender Service for the District of Columbia) at 3, 6-7. Superior Court Chief Judge Rufus G. King III expressed the court’s “concern” with such a provision, noting the “toll” it “would take on juror and judicial resources” given the large increase in the number of jury-demandable cases that would result. Id. at Attachment E (testimony of Chief Judge Rufus G. King III) at 1. The Chief Judge estimated that the provision would create “an additional 300 jury trials per year.” Id. at Attachment E (testimony of Chief Judge King) at 2.
The Council responded to the Superior Court’s concerns. Finding that the “180 *176 day limit would involve a significant increase in the administrative burden on the [Superior] Court,” the Council decided to set the threshold at two years instead. Id. at 4. It then changed the maximum-fine threshold for multiple offenses from $1,000, as had been proposed, to the current $4,000 “in order to be consistent with the change in the threshold for jury de-mandable offenses based on. [the] cumulative prison penalt[y] [of two years].” Id.
The committee report stressed that these changes ensured “that the legislation will apply to cases representing roughly one to 5% of misdemeanor cases in Superi- or Court,” which would constitute only “10-50 total cases per year[.]” Id. at 5. Given this limited impact, the Council Committee “believe[d] that the additional resources required by the [Superior] Court and law enforcement agencies will be minimal.” Id.
Appellant’s interpretation of D.C. Code § 16-705 would plainly undo the Council’s careful balancing. Instead of ten to fifty additional cases per year being subject to a jury trial, the Superior Court would be faced with additional jury trials for the many offenses that currently are punishable by 180 days in prison and/or a $1,000 fine.[7] As former Chief Judge King noted in his testimony, such a result would strain the Superior Court’s resources by requiring the court to summon and accommodate more jurors; to spend more time on misdemeanor cases given that jury trials typically take longer than bench trials, resulting in the court resolving fewer overall cases per month; and to “realign[ ] ... resources” from “more serious felony trials” to misdemeanors. D.C. Council, Report on Bill 14-2 at Attachment E (testimony of Chief Judge' King) at 2-3.
Significantly, the Council weighed these issues four years after passage of the most recent amendments to the WCCA. The Council would presumptively have been aware of the current WCCA assessment system, yet it still expressed its intention to limit the number of misdemeanor cases that would be tried by a jury, and it nowhere indicated that it viewed WCCA assessments as affecting that analysis. In fact, the committee report outlined proposed changes to several offenses that would set the maximum penalties at 180 days in prison, and/or a fine of $1,000, “so that the defendant does not have the right to a jury trial in these cases.” Id. at 3-4. Yet, under appellant’s interpretation of “fine or penalty” in D.C. Code § 16-705, a defendant would have been entitled to a jury trial in those cases.[8]
Indeed, considered in context, appellant’s argument would suggest that both the Council and the Superior Court have *177 been ignorantly interpreting the provisions relating to jury-demandable offenses for more than two decades. First, WCCA assessments were created in 1982, and the Misdemeanor Streamlining Act was not passed until 1994. See 29 D.C. Reg. 983-85 (1982); 41 D.C. Reg. 2608 (1994). Appellant seems to assume that the Council did not realize that its decision in 1994, to set the maximum fíne for various offenses at $1,000 did not in fact accomplish its. goal of making those offenses non-jury-demanda-ble because the WCCA assessment would have to be added to the $1,000. Second, appellant’s theory would lead to the conclusion that the Superior Court has, since 1993,[9] erroneously denied a jury trial in every case in which a defendant has been charged with at least one offense punishable by a fine of $1,000.
In sum, the Council never intended what appellant proposes. Whatever the definitions of “fine,” “penalty,” or “assessment” may be in isolation, the legislative history and. the larger statutory scheme “make[ ] clear that [the statutory terms] should not be read to extend to the outer limits of [their] definitional possibilities.” Odeniran v. Hanley Wood, LLC, 985 A.2d 421, 426 (D.C. 2009) (internal quotation marks omitted); see also Dolan v. United States Postal Serv., 546 U.S. 481, 486, 126 S.Ct. 1252, 163 L.Ed.2d 1079 (2006) (concluding that “context and precedent require[d] a narrower reading” of a statute because. “[t]he definition of words in isolation ... is not necessarily controlling in statutory construction”); O’Rourke, 46 A.3d at 386-87 (rejecting a statutory interpretation that would lead to “incongruous consequences” and was “in tension” with other statutes). We therefore affirm the decision to deny appellant a jury trial.
E. Remand to Correct Sentence
We remand for the limited purpose of correcting appellánt’s sentence. The trial judge imposed a sentence of 180' days’ incarceration, suspended as to' all but thirty days. A sentence of 180 days may be imposed for misdemeanor sexual abuse, D,C. Code § 22-3006 (2012 Repl.), but appellant was convicted of attempted misdemeanor sexual abuse, which carries half that penalty. See id. § 22-3018.
III. Conclusion
We remand with instructions to correct appellant’s sentence. In all other respects, the judgment of the Superior Court is hereby

Affirmed.

. D.C. Code §§ 22-3006, -3018 (2012 Repl.).

. D.C. Code § 23-1329(c) (2012 Repl.).

. Appellant cites certain federal cases for the proposition that federal victim-assistance assessments have been interpreted as penalties or punishments. See United States v. King, 824 F.2d 313, 317 (4th Cir. 1987); United States v. Smith, 818 F.2d 687, 690 (9th Cir. 1987); United States v. Mayberry, 774 F.2d 1018, 1021 (10th Cir. 1985). However, those decisions are not binding oñ us, and they address . issues different than the one presented here. Moreover, other federal courts have, cast doubt on the proposition that the federal assessments are punishments. See United States v. Donaldson, 797 F.2d 125 (3d Cir. 1986) (holding that the rule of lenity did not apply to the statute establishing the assessments because "Congress’ purpose in enacting [the statute] Was not to punish criminal defendants, but rather was to raise revenue”); see also United States v. Dobbins, 807 F.2d 130, 131 (8th Cir. 1986) (adopting the holding of Donaldson).

. Appellant emphasizes that the word ‘‘fines” occasionally appears in the committee report for the latest amendments to the WCCA. Many of these references, however, are instances where the Committee was summarizing the testimony of various witnesses who supported the amendments. See D.C. Council, Report on Bill 11-657 at 8-9, 11 (Sept. 26, 1996). Appellant also points to the use of the word "fines” in the'preamble of the proposed bill as it is attached to the committee report. See id. at Attachment A. However, that term does,not,appear in the preamble for the enrolled original. See 44 D.C. Reg. 1142 (1997). Nowhere does the Council suggest that WCCA assessments are “fines” for purposes of analyzing the right to a jury trial. Finally, appellant notes that then-Mayor Marion Barry sometimes referred to the assessments as "fines” in a 1981 letter recommending the original WCCA legislation to the Council. See D.C. Council, Report on Bill 4-361 at Appendix A (Dec. 16, 1981). However, these references were made in the context of a brief summary of the proposed legislation, and, in any event, the Mayor does not express the intent of the Council.

. This provision was previously codified at D.C. Code § 16—705(b)(1) (1997 ed.). A small change was made in 1994 to correct a typographical error, See 41 D.C. Reg. 5197 (1994); D.C. Council, Report on Bill 10-673 at 5 (June 21, 1994).

. Appellant’s theory would also support an argument he made in the Superior Court but does not advance on appeal. He argued that he was entitled to a jury trial on each of the charges of contempt because the WCCA assessment would be added to the maximum fine of $1,000. A provision in the Misdemean- or Jury Trial Act gives a defendant the right to a jury trial if he "is charged with 2 or more offenses and the offenses include at least one juiy demandable offense and one non-juiy demandable offense[.]” See D.C. Code § 16-705(b — 1) (2012 Repl.); 49 D.C. Reg. 3440 (2002).

. Most of the 180-day offenses would be implicated because the Council has provided that the default maximum fine for those offenses is $1,000. See D.C. .Code § 22-3571.01(b) (2012 Repl. & Supp. 2014) (the “Criminal Fine Proportionality Amendment Act of 2012”).

. The committee report for the Criminal Fine Proportionality Amendment Act of 2012, which set the default maximum fine for 180-day offenses at $1,000, see D.C. Code § 22-3571.01(b) (2012 Repl. & Supp. 2014); 60 D.C. Reg. 9834 (2013), contains similar examples. For instance, the report stated that the maximum fine for a first offense of driving under the influence (DUI) or driving while intoxicated (DWI) was being changed from $300 to $1,000, D.C. Council, Report on Bill 19-214 at 12 (Oct. 9, 2012). Because WCCA assessments are imposed for traffic offenses, see D.C, Code § 4-516(a) (2012 Repl.), a defendant charged with those offenses would be exposed to a potential payment over $1,000. Nonetheless, the report stated: "While the penalty, increases substantially, neither the old .penalty, nor the new penalty, create a right to a jury trial.” D.C. Council, Report on Bill 19-214 at 12 (citing D.C. Code § 16-705(b)).

. See 40 D.C. Reg. 796, 799 (1993) (amending D.C. Code § 16-705 to permit a jury trial when a defendant has been charged with an offense punishable by a fine or penalty of “more than $1,000”).